AO 106A (08/18) Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT

for the

Northern District of New York

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>One iPhone 13 cellular phone with<br>IMEI # 352991730038928, as described more fully in<br>Attachment A. | )<br>)<br>)<br>)<br>)<br>)<br>) |

Case No. 8:23-MJ- 578   (GLF)

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

One iPhone 13 cellular phone with IMEI # 352991730038928, as described more fully in Attachment A.

located in the        Northern        District of        New York        , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| Title 8, United States Code,        Alien Smuggling<br>Section 1324(a)(1)(A) | |

The application is based on these facts:

See Attached Affidavit

☑ Continued on the attached sheet.

☑ Delayed notice of   30   days *(give exact ending date if more than 30 days:                    )* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Timothy W. Irving, Special Agent, HSI
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
        Telephone        *(specify reliable electronic means)*.

Date: Oct. 16, 2023

*Judge's signature*

City and state:  Plattsburgh, New York

Hon. Gary L. Favro, U.S. Magistrate Judge
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF: (1) One iPhone 13 cellular phone with IMEI # 352991730038928, currently located at 11 Old Stonebreak Road, Malta, NY 12020. | Case No. 8:23-MJ- 578   (GLF) |

## AFFIDAVIT IN SUPPORT OF AN APPLICATION UNDER RULE 41 FOR A WARRANT TO SEARCH AND SEIZE

I, **Timothy W. Irving**, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1.      I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property an iPhone 13 cellular phone with IMEI # 352991730038928, which is currently in law enforcement possession at the Homeland Security Investigations (HSI) Albany Office located at 11 Old Stonebreak Road, Malta, NY 12020.

2.      I am a Special Agent with the Department of Homeland Security (DHS) Homeland Security Investigations (HSI) in Albany, New York and have been employed in this capacity since April 2007.  I was previously employed as a Customs and Border Protection Officer in Alexandria Bay, New York, and as a Customs and Border Protection Agriculture Specialist in Boston, Massachusetts.  Currently, it is my duty to conduct investigations of, and to make arrests for, violations of Title 8, 18, 19, 21, and 31 of the United States Code and related offenses.

3.      I have personally conducted and participated in numerous undocumented noncitizens (UDNCs) smuggling investigations which have resulted in the arrests of UDNCs, the individuals transporting and/or harboring UDNCs, and the seizure of proceeds, and property from the illegal

activity. I have since become familiar with the methods utilized by smugglers to transport and harbor UDNCs, and the use of money service businesses to transmit and conceal the source of the proceeds from the illegal activity.

4.     The statements contained in this affidavit are based upon my investigation, information provided by other law enforcement officers, other personnel specially trained in the seizure and analysis of electronic media, and on my experience and training. Because this affidavit is being submitted for the limited purpose of securing a search warrant, I have not included all facts known to me concerning this investigation. I have set forth only the facts that I believe are necessary to establish probable cause to believe that evidence of the Subject Offenses will be found upon a search of the iPhone 13 (IMEI # 352991730038928) cellular phone, as described in Attachment B.

5.     The applied-for warrant would authorize the forensic examination of the iPhone device described further in Attachment A, for the purpose of identifying electronically stored data described in Attachment B. Based on my training and experience and the facts set forth in this affidavit, there is probable cause to believe that Jhonny J. BUSTILLO HERNANDEZ has committed a violation of Title 8, United States Code, Section 1324, by committing the offense of alien smuggling.  There is also probable cause to search the property described in Attachment A, for evidence of these crimes as described in Attachment B.

## IDENTIFICATION OF THE DEVICES TO BE EXAMINED

6.     The property to be searched is an iPhone 13 (IMEI # 352991730038928), herein after the "Subject Device," which is currently located at the HSI Albany Office, located at 11 Old Stonebreak Road, Malta, NY 12020.

7.     The applied-for warrant would authorize the forensic examination of the subject device for the purpose of identifying electronically stored data particularly described in Attachment B.

## USE OF CELL PHONES IN SMUGGLING EVENTS

8.     Cellular telephones are used by smugglers to contact co-conspirators after crossing the Canadian Border to arrange for vehicle pick up of UDNCs.  While in transit to a stash house or other location, after picking up, smugglers utilize cellular telephones to communicate with the operator of the location/ residence they are in transit to, as well as to communicate with co-conspirators acting as surveillance for law enforcement activity ahead of and/or behind the vehicle transporting UDNCs. Smugglers extensively utilize cellular telephones to coordinate the delivery and removal of UDNCs. Smugglers extensively utilize cellular telephones to coordinate the movement of UDNCs to various cities in the interior of the United States.  This includes making calls to smugglers for the purpose of picking up UDNCs, to determine a location away from the location to transfer the UDNCs between vehicles, calls to determine how much money will be paid to smugglers to transport the UDNCs, calls to update status after the smuggler has successfully crossed a law enforcement checkpoint, and calls to coordinate transfer of UDNCs to other smuggler vehicles in hub cities.

9.     Encrypted text communication applications, such as "WhatsApp", are often found to be installed on smuggler's phones and used to communicate with others in their smuggling organizations as well as UDNCs to be smuggled.  The encrypted nature of these applications provides for safety from interception by anyone but the intended recipients. These applications also provide options for international communication which assists with the logistics of UDNC smuggling across the border and further into the United States.

3

10.     As part of this communication, smugglers will frequently send data files, such as photographs, images, screenshots, audio, and video recordings; through native software and/or third-party applications to verify the presence and number of UDNCs, provide directions and maps for intended smuggling routes and locations, financial proof of payment for smuggling fees and incurred expenses, modes and availability of transportation utilized for the smuggling of UDNCs.

11.     Cellular phones with Global Positioning System (GPS) functions are used by smugglers to navigate between pickup and drop off locations while transporting UDNCs.  GPS enabled smart cellular phones are frequently utilized by smugglers, especially when the smuggler is not familiar with the area, they are operating in.

12.     The Subject Device is a cellular phone and it is equipped with the ability to take pictures, send data and communication via text message, navigate with GPS, access the internet, and communicate via talk.

## PROBABLE CAUSE

13.     On October 5, 2023, Border Patrol Agent Andrew Sutherland was traveling east on NY-122 near the Town of Constable in Franklin County, New York.  In recent months, the Constable and Fort Covington, NY area has been heavily utilized by human smugglers and illegal non-citizens primarily due to its proximity to the United States/ Canada International boundary.  This is known to Border Patrol agents as a location that has recently been used by illegal non-citizens.  At approximately 7:10 a.m., Border Patrol Agent Andrew Sutherland observed a white Chrysler Pacifica bearing a New Jersey license plate (H77SEG), a rental car, traveling westbound on NY-122 with a single occupant.  The vehicle is registered to C.C. Rental.  Based upon Border Patrol Agent Andrew Sutherland's training and experience and the location and direction of travel near the Canadian Border

4

the vehicle's activities were consistent with recent human smuggling activities.  Border Patrol Agent Andrew Sutherland queried license plate reader (LPR) data which showed the vehicle northbound near Westville, NY at approximately 7:18 a.m., and southbound near Westville, NY at approximately 7:36 a.m. departing the border area in a short amount of time. At approximately 7:54 a.m. the vehicle was observed on a LPR eastbound NY-11 in Chateauguay, NY. At approximately 8:09 a.m.  These movements are tactics that are commonly used during human smuggling events.  Border Patrol Agent Bradley Audette who is assigned to the New York State Intelligence Center was notified of the suspicious vehicle and notified your affiant of the potential southbound travel of the vehicle.  At approximately 10:15 a.m. your affiant observed a vehicle matching the description of the white Chrysler Pacifica with New Jersey license plates traveling south on Interstate 87 just north of exit 23, Warrensburg, NY and it was occupied multiple times.  At approximately 10:39 a.m. the vehicle was observed on a LPR on Interstate 87 South near Saratoga Springs, NY.  Your affiant observed the vehicle shortly after that and conducted mobile surveillance until approximately mile marker 15 when the New York State Police Trooper Harrison Van Buren initiated a traffic stop on the vehicle for speeding and moving from a lane unsafely.

14.     When the vehicle was stopped it was being driven by Jhonny J. BUSTILLO HERNANDEZ, a citizen and national of Honduras who is illegally present in the United States. The three other occupants were Noe PATRICIO CHOC a citizen and national of Guatemala, Baudilio Rene FLORENCIO TOMAS, a citizen and national of Guatemala, and Edgar Gilberto RIVERA GARCIA, a citizen and national of Mexico.  The three individuals were detained upon suspicion of being illegally present in the United States and transported to the Homeland Security Investigations (HSI)/ Enforcement and Removal Operations (ERO) Office in Malta, NY for interviews and processing. Jhonny J. BUSTILLO HERNANDEZ was also detained and transported to the HSI/ ERO

5

Office for an interview. Jhonny BUSTILLO HERNANDEZ was issued a traffic ticket for speeding, moving from a lane unsafely, and unlicensed operation, his license was expired. An inventory search of the vehicle was conducted prior to towing, and your affiant observed sticks and dirt/sand consistent with individuals who has walked through the forest. Everyone in the vehicle had a backpack, and identity documents issued by foreign countries.

15.     Your affiant and HSI Special Agent Daria Egan interviewed Jhonny J. BUSTILLO HERNANDEZ. An administrative immigration interview as well as law enforcement database queries were conducted and it was determined that was Jhonny J. BUSTILLO HERNANDEZ was granted Voluntary Departure in 2005, and then was granted Deferred Action for Childhood Arrivals (DACA). Jhonny J. BUSTILLO HERNANDEZ's DACA expired in 2019. Jhonny J. BUSTILLO HERNANDEZ was then interviewed post Miranda Warning and he stated he goes by "JJ" and in sum and substance that he picked up the rental car in Long Island, NY on October 4, 2023, then traveled to the Comfort Inn, located at 17 Old Gick Road, Saratoga Springs, NY 12866. Jhonny J. BUSTILLO HERNANDEZ stated that he departed the hotel at approximately 5:30 a.m. on October 5, 2023, and traveled to exit 36 on Interstate 87, then about 10 minutes off the highway where he picked up the three men in an empty parking lot. Jhonny J. BUSTILLO HERNANDEZ stated that he never went near the border. Jhonny J. BUSTILLO HERNANDEZ stated that he then stopped at a rest area later identified as the High Peaks Rest Area on Interstate 87 South to use the bathroom and then continued south until he was stopped by the police on his way to a mall in New Jersey to drop the men off. Jhonny J. BUSTILLO HERNANDEZ stated that he is provided with a location in Waze by "They" who control his Waze and is told to pick up people.

16.     Jhonny J. BUSTILLO HERNANDEZ gave your affiant consent to view the Waze application on his phone, the Subject Device, an iPhone 13. Jhonny J. BUSTILLO HERNANDEZ

6

identified the Subject Device as his, and it was located with him during the traffic stop. The Subject Device's user account information included the name "Jhonny Bustillo" and the address 1857 Alcovy Trace Way, Lawrenceville, GA, 30045. The Subject Device's IMEI is 352291730038928. The most recent entry in Waze was the address 651 Kapkowski Road, Elizabeth, NJ which is a mall. The second most recent entry in Waze was Burns-Holden Road, Fort Covington, NY, a location less than 2,000 feet from the United States and Canada Border. A review of Jhonny J. BUSTILLO HERNANDEZ Waze application showed additional entries for Burns Holden Road, in Fort Covington, NY. Jhonny J. BUSTILLO HERNANDEZ stated that he gets paid to drive people, sometimes using Zelle, and cash. Jhonny J. BUSTILLO HERNANDEZ would not give consent to view his WhatsApp because it's not his number, but another number and other people control the WhatsApp, but then allowed your affiant to view the contacts in WhatsApp. Jhonny J. BUSTILLO HERNANDEZ's WhatsApp contact number is (504) 892-1154, with the name "Jj". Jhonny J. BUSTILLO HERNANDEZ would not allow consent to view the WhatsApp chats because anything in there would be on him and he does not control those, and it would be blamed on him. Jhonny J. BUSTILLO HERNANDEZ stated that he has to look at WhatsApp because that's how he knows where to pick people up.

17.     Your affiant, HSI Special Agent Daria Egan, and Deportation Officer Wilmer Torres a native Spanish speaker interviewed Baudilio Rene FLORENCIO TOMAS. An administrative immigration interview was conducted, and Baudilio Rene FLORENCIO TOMAS stated in sum and substance that he is a citizen of Guatemala and entered the United States from Canada where he had been residing for four and a half years. Baudilio Rene FLORENCIO TOMAS stated that he entered the United States by walking across the border and was not inspected by an officer. Baudilio Rene FLORENCIO TOMAS was read his Miranda rights in Spanish and agreed to be interviewed.

7

Baudilio Rene FLORENCIO TOMAS showed the investigators his cellular phone that had an image from a WhatsApp contact "Omar Mexico" from 1:01 a.m. showing a satellite image of the United States, Canada Border near Burns Holden Road, in Fort Covington, NY. Baudilio Rene FLORENCIO TOMAS stated that he was picked up by the driver who he was with today in the vehicle about 7:30 a.m. or 8:00 a.m. this morning. Baudilio Rene FLORENCIO TOMAS gave consent to search his phone, the WhatsApp chat with "Omar Mexico" included a contact for "Jj". There was also a WhatsApp chat with "Jony" with a contact number of (504) 892-1154, which matches the number of Jhonny J. BUSTILLO HERNANDEZ WhatsApp account. Baudilio Rene FLORENCIO TOMAS stated that he was supposed to wait for the driver who is locked up to pick him up. Baudilio Rene FLORENCIO TOMAS stated that they all got in the car at the same time.

18.    Your affiant, HSI Special Agent Daria Egan, and Deportation Officer Wilmer Torres interviewed Noe PATRICIO CHOC. An administrative immigration interview was conducted, and Noe PATRICIO CHOC stated in sum and substance that he was a citizen and national of Guatemala, who was residing in Canada and working on farms for 14 seasons and last entered Canada on April 26, 2023. Noe PATRICIO CHOC stated that he entered the United States about 1:00 a.m. on October 5, 2023, and crossed the border illegally and does not have permission to be in the United States. Noe PATRICIO CHOC stated that the guy in Canada was coordinating with the driver, and he gave him a description of the car that was going to pick him up. Noe PATRICIO CHOC gave consent to search his cellular phone and there was a WhatsApp chat with "Omar De Paser Per" with a contact in the chat for "Jj". In that WhatsApp chat the same image that was sent to Baudilio Rene FLORENCIO TOMAS was sent to Noe PATRICIO CHOC at the same time 1:01 a.m. There was also a WhatsApp chat with "Jony Usa" that included the address 289 Burns Holden Road, Fort Covington, NY. The WhatsApp chat with "Jony Usa" also included satellite image of the United States, Canada Border.

8

Noe PATRICIO CHOC stated that he paid "Omar" in Canada $3,000, to cross the border.

19.     HSI Special Agent Patrick Dell'Anno and HSI Special Agent Derek Zalewski interviewed Edgar Gilberto GARCIA RIVERA post Miranda warning with the assistance of a translator.  Edgar Gilberto GARCIA RIVERA stated that he was citizen of Mexico, and no legal standing to be in the United States.  Edgar Gilberto GARCIA RIVERA stated in sum and substance that he flew from Mexico to Canada and was in Canada for three days.  Edgar Gilberto GARCIA RIVERA was driven to the United States, Canada Border and told to walk through the woods, using a GPS coordinate that he got from a man he was told was "Jhonny".  Upon crossing the border Edgar Gilberto GARCIA RIVERA stated that he sent his location to "Jhonny" using WhatsApp.  Edgar Gilberto GARCIA RIVERA stated that he crossed the border with six other people, and they all got into "Jhonny's" car. Edgar Gilberto GARCIA RIVERA identified the driver as the other man in custody Jhonny J. BUSTILLO HERNANDEZ, and that he told them to keep their heads down while in the car.  Edgar Gilberto GARCIA RIVERA stated that they drove for about an hour and a half, stopped and met up with a red sport utility vehicle (SUV), four of the people got into the other car and then they continued south.  Edgar Gilberto GARCIA RIVERA stated that he paid a women "Emma" $2,700, Canadian Dollars, and then was supposed to pay "Jhonny" $3,000, United States Dollars upon arrival in New York City.  Edgar Gilberto GARCIA RIVERA was asked if "Jhonny" knew he was illegal, and he stated "Yes".

20.     As noted above, in my experience cellular phones can contain pictures, videos, contacts, text messages, contact history, call logs, GPS coordinates, messages, and contacts from messaging applications to include, but not limited to Facebook messages, WhatsApp contacts and messages, and social media information.    All these items may possess evidence of a crime and be

useful to identify co-conspirators, stash houses, vehicles, and other current instrumentalities of alien smuggling.

21.     The Subject Device is currently in storage at the HSI Albany Office located at 11 Old Stonebreak Road, Malta, NY 12020.  In my training and experience, I know that Subject Device has been stored in a way to ensure that material relevant to this investigation will be saved in substantially the same state as they were when Subject Device first came into the possession of HSI.

## TECHNICAL TERMS

22.     Based on my training and experience, I use the following technical terms to convey the following meanings:

    a.  Cellular telephone:  A cellular telephone (or mobile telephone, or wireless telephone) is a handheld wireless device used for voice and data communication through radio signals.  These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones.  A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone.  In addition to enabling voice communications, wireless telephones offer a broad range of capabilities.  These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet.  Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

    b.  Digital camera:  A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film.  Digital cameras use a variety of fixed and removable storage media to store their recorded images.  Images can usually be

retrieved by connecting the camera to a computer or by connecting the removable
storage medium to a separate reader. Removable storage media include various types
of flash memory cards or miniature hard drives. Most digital cameras also include a
screen for viewing the stored images. This storage media can contain any digital data,
including data unrelated to photographs or videos.

c.  Portable media player:  A portable media player (or "MP3 Player" or iPod) is a
handheld digital storage device designed primarily to store and play audio, video, or
photographic files. However, a portable media player can also store other digital data.
Some portable media players can use removable storage media. Removable storage
media include various types of flash memory cards or miniature hard drives. This
removable storage media can also store any digital data. Depending on the model, a
portable media player may have the ability to store very large amounts of electronic
data and may offer additional features such as a calendar, contact list, clock, or games.

d.  GPS: A GPS navigation device uses the Global Positioning System to display its
current location. It often contains records the locations where it has been. Some GPS
navigation devices can give a user driving or walking directions to another location.
These devices can contain records of the addresses or locations involved in such
navigation. The Global Positioning System (generally abbreviated "GPS") consists of
24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely
accurate clock.  Each satellite repeatedly transmits by radio a mathematical
representation of the current time, combined with a special sequence of numbers.
These signals are sent by radio, using specifications that are publicly available. A GPS
antenna on Earth can receive those signals. When a GPS antenna receives signals from
at least four satellites, a computer connected to that antenna can mathematically
calculate the antenna's latitude, longitude, and sometimes altitude with a high level of
precision.

e.  PDA: A personal digital assistant, or PDA, is a handheld electronic device used for
storing data (such as names, addresses, appointments, or notes) and utilizing computer

11

programs. Some PDAs also function as wireless communication devices and are used to access the Internet and send and receive e-mail. PDAs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can store any digital data. Most PDAs run computer software, giving them many of the same capabilities as personal computers. For example, PDA users can work with word-processing documents, spreadsheets, and presentations. PDAs may also include global positioning system ("GPS") technology for determining the location of the device.

      f.   Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

      23.    Based on my training, experience, and research, I know that the Subject Device has capabilities that allow it to serve as a wireless telephone, digital camera, portable media player, GPS navigation device, and PDA. I also know that the Subject Device can be used to access the internet. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

      24.    Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period on the device. This information can sometimes be recovered with forensics tools.

      25.    *Forensic evidence*. As further described in Attachment B, this application seeks

permission to locate not only electronically stored information that might serve as direct evidence of

the crimes described on the warrant, but also forensic evidence that establishes how the Devices were

used, the purpose of its use, who used it, and when.   There is probable cause to believe that this

forensic electronic evidence might be on the Devices because:

     a.   Data on the storage medium can provide evidence of a file that was once on the storage

        medium but has since been deleted or edited, or of a deleted portion of a file (such as

        a paragraph that has been deleted from a word processing file).

     b.   Forensic evidence on a device can also indicate who has used or controlled the device.

        This "user attribution" evidence is analogous to the search for "indicia of occupancy"

        while executing a search warrant at a residence.

     c.   A person with appropriate familiarity with how an electronic device works may, after

        examining this forensic evidence in its proper context, be able to draw conclusions

        about how electronic devices were used, the purpose of their use, who used them, and

        when.

     d.   The process of identifying the exact electronically stored information on storage

        medium that are necessary to draw an accurate conclusion is a dynamic process.

        Electronic evidence is not always data that can be merely reviewed by a review team

        and passed along to investigators.   Whether data stored on a computer is evidence may

        depend on other information stored on the computer and the application of knowledge

        about how a computer behaves.   Therefore, contextual information necessary to

        understand other evidence also falls within the scope of the warrant.

13

e. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

26.    *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the device consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection to determine whether it is evidence described by the warrant.

27.    *Manner of execution.* Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premise. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

28.    The applied for warrant will be executed by your affiant with other HSI Special Agents. However, law enforcement from other agencies involved in the investigation may be utilized by HSI in the execution of the applied for warrant, including the forensic examination of the subject device.

## CONCLUSION

29.    I submit that this affidavit supports probable cause for a search warrant authorizing the examination of the subject device described in Attachment A to seek the items and evidence described in Attachment B.

30. I declare under penalty of perjury that the statements above are true to the best of my knowledge, information and belief.

Respectfully submitted,

Timothy W. Irving
Special Agent
Homeland Security Investigations

I, the Honorable Gary L. Favro, United States Magistrate Judge, hereby acknowledge that this affidavit was attested to by the affiant by telephone on October 16, 2023 in accordance with Rule 4.1 of the Federal Rules of Criminal Procedure.

Honorable Gary L. Favro
UNITED STATES MAGISTRATE JUDGE

15

**ATTACHMENT A**

1.        The property to be searched is an iPhone 13 (IMEI # 352991730038928) and SIM

Card, hereinafter the "Subject Device." The subject device is currently located at the HSI Albany

Office located at 11 Old Stonebreak Road, Malta, NY 12020.

2.        The photos below depict the Subject Device:

 

## ATTACHMENT B

1.      All records on the Subject Device described in Attachment A that relate to violations of 8 USC § 1324(a)(1)(A) (alien smuggling) and involve Jhonny J. BUSTILLO HERNANDEZ and/or any co-conspirators, including information regarding human smuggling activity, routes, meeting locations, payment arrangements, and more, and including:

     a.   Listings of incoming and outgoing calls with corresponding date/time of calls;

     b.   Stored telephone and address directories;

     c.   Direct connect and identification numbers;

     d.   Pictures and videos;

     e.   All audio recordings;

     f.   All voice mail recordings;

     g.   All location and GPS data;

     h.   All instant messaging and related stored communications;

     i.   All SMS messages and related stored communications; and,

     j.   Any other notations or electronic storage of any kind.

2.      Evidence of user attribution showing who used or owned the Device at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history;

     a.   Records of Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses.

3.      As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored,

2

including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

3.      This warrant authorizes the forensic examination of the Subject Device for the purpose of identifying the electronically stored information including, subscriber information, contacts, call logs, voicemail contained in the phone memory or SIM card, text messages, all social media, emails, location data, all linked bank accounts, and photographs contained in the phone memory and/or external memory card.

4.      This warrant also authorizes a review of electronic storage media and electronically stored information seized or copied pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, HSI may deliver a complete copy of the seized or copied electronic data to the custody and control of attorneys for the government and their support staff for their independent review.

3